1469 Eastern Arkansas United States v. Michael Willins Mr. Benka. Good afternoon. May it please the court. My name is Patrick Benka and I do represent the appellate in this case, Mr. Willins. Mr. Willins was convicted in the Eastern District of two counts. One count I am not presenting today. I'm not making a challenge with regard to the sufficiency of the evidence as to count one in the indictment. However, we are making a challenge as to 18 U.S.C. 2422 in that Mr. Willins was convicted of one count of traveling for the purpose of engaging in illicit sexual conduct or actually was charged with one kind of attempted coercion and enticement of a minder under 18 U.S.C. 2422. So we're presenting an argument under that issue. And also as to the case in total, we believe that district court erroneously excluded the crucial testimony of Mr. Willins' expert, Dr. or Mr. Chupik. The case, I think some rendition of the facts is important. Mr. Willins lived in Tennessee at the time. He traveled based upon a conversation that he had with a undercover officer who was referenced as Sammy in our briefs, but it was an undercover officer. I think the facts that are in a chat room that referenced sexual taboos and Sammy reached out to him in that environment and started to engage him in conversation. I think that's important because it wasn't, and I think it's become more important as we start talking about the cases such as in particular, he was not reaching out looking for a sexual experience that included a child. That's important. He had no history of doing that. On that score, counsel, I just want to ask, would you agree that a lot of the chat room conversation involved not only sexual acts with the minor, but also sexual acts with the undercover officer, Sammy, the child's mother. Is that a fair characterization? Yes. That's how it initially started out. Then they started introducing their fantasies with regard to it. It was the officer, about not only her fascination with it, but also that the child had been exposed to it on previous occasions. Yes, it was introduced through the officer, which is very distinguishable from the cases that we're going to be talking about today, such as Spurlock and such as Hype. Yes, I think that also tied into the fact that, again, a lot of the conversations, unlike any other cases, are not geared and centered on this fantasy. They go off into other fantasy. They go off into other things they want to do. It occurred over a long period of time. The cases in Spurlock, the main focus of the defendant in that case was to seek out someone who was interested in doing those type of things with a child. Counsel, let me interrupt you. How many times, viewing the evidence favorable to the verdict, how many times did the defendant speak with Sammy about the possibility of having sex with the minor daughter? I don't believe that he ever spoke in a way that's required under Spurlock, you know, regarding this. Okay, well, let me, I'll ask you another question. Sure. How many times did he try to call the daughter? Well, at the urging of Sammy, there was a phone call made, but there was never any contact or any communication. So one call. Now, you've not raised entrapment. A lot of your argument so far sounds entrapment-y when you start saying several of those magic words that you've said, but the entrapment was not raised, right? Entrapment wasn't raised particularly at the trial court level. I was not the trial attorney. Yeah, yeah, yeah, but it just wasn't raised yet. Correct. Yes, sir. And you go ahead and make your argument about sufficiency. Go ahead. Yes. Let me, let me, let me add, I want to add one question to Judge Benton, and this was kind of what I was getting at earlier, which is, does his, under the elements of this offense, the enticement charge, does his intent have to be to have, his primary intent have to be to have sex with the mother and the child? In other words, even if his primary motivation is to have sex with Sammy, is it enough that he also showed an intent to have sex with the child? Well, I think that, that, you know, that standard is outlined in Spurlock. You know, the defendants, you know, you have to have, you know, they have to persuade, induce, coerce, or entice anyone under the age, and you don't necessarily have to have the child, but you can entice through the mother or the, in this case, the undercover officer. And the way that you do that is you ask the mother to ask the daughter, hey, would they be willing to do this? Or, hey, would they be willing to do that? In those types of directions by the defendant, we're not here as they were in other cases, such as Spurlock and Hite. I mean, there was directions, hey, ask her if she's willing to do this, ask her if she's willing to do that, ask her if she's willing to do this. And there's no direction by Mr. Hite, I mean, by Mr. Willans in this particular case. So I think that that's a distinguishing factor. And I think that's the reason why it's so kind of, it's, it's, we're kind of on the cusp here because in this case, also Mr. Willans testified as to his belief that this was all fantasy and this, and to him, it was fantasy. And again, you start bringing in his history. He has no history of reaching out or engaging in this type of activity with underage children. He had a child, the evidence, the record wore that out with regard to him having a child during that period of time. There was evidence of the fact that presented that he did not have any interactions with law enforcement or engaged in, and where they could actually find out that he's engaged in this conduct. So that becomes the issue with regard to that. There's just no facts to support that he's actually litigating, actually reaching out or attempting to reach out, which is the first issue. Well, that's why I asked the question. It doesn't matter. I mean, the fact of the matter is if he's trying to seduce Sammy and not the child, does that matter if they're inducing the child to come in? Because a lot of these, as I asked you earlier, a lot of these descriptions of these sexual activities involve all three of them together. And so does it really matter to satisfy the elements of the effects? Well, I think it does matter because you're actually, you're not, you're not, but you're not sitting there saying, hey, look, this is, this is, we're talking about engaging a sexual act with the mother and the child. Okay. You're talking about enticing of a minor. And what acts did the defendant do in order to reach that element? And that's the reason why I didn't think that the facts bore that out. That's the reason why I only raised the sufficiency claim as to this particular issue, because I just don't, it just was not there. There was no engagement with the child. There was no directions. There was no, hey, there was no constant theme like there was with, you know, both Spurlock and Height. Those defendants, they went in looking specifically for this type of relationship or this type of contact. That was not, that was not Mr. Willen's intent at all. And like I said, the topic was raised by, by the Sam who, Sammy, who was the purported mother of the minor. So that gets into the other issue. You know, obviously I did not raise the issue with regard to sufficiency because under the statute, you apply the facts to what was bore out and, you know, you realize you can't raise that claim. However, what it does, the second issue is crucial, absolutely crucial. And I think that what differentiates this from the other cases is, again, you don't have Mr. Willen's after he's arrested admitting that he was going to have any sexual relations with an underage child after he was arrested, which is not the case with regard to Height. Now Height made those admissions that he was intending on having sex. And I believe Spurlock did as well. So you don't have that. You don't have him actively seeking the child out, as I said, and with regard to Height, who was not engaging with the child, did not have any contact with the child, did not follow up with the child, did not do, besides the initial call that was he didn't make any text messages, requests, make any follow-up phone calls. So then his argument when he gets to trial is, look, this was fantasy. I was engaged in role playing. In fact, you know, Sammy was engaged in role playing. We were both engaged in it back and forth and, you know, that was not my intent though. And I believe under those in Height, this man was involved from the very beginning. He wanted to have, and I'm going into my rebuttal time, but I think it's important to know, but he was reaching out for the specific purpose of having a sexual relationship with an underage child. That was the goal from the beginning. It was always the goal from the beginning. Okay. Then he wanted to argue that it was a fantasy and that we engage in these things and we go in these rooms and we have these chats and it never airs out and it's never, it's supposed to air out. Well, that court, the DC court felt that even under those circumstances, and let me just tell you, the facts were way more egregious than they were here. The DC court said, look, he should get the opportunity to be able to present that evidence, to present that expert evidence, to explain what's going on, to explain what goes on in these chat rooms. They better understand, you know, the fact that people engage in fantasy. And remember, this was a fantasy that was suggested by the government office. This was Sammy's fantasy and he was playing along with her. So I do have some rebuttal time that I do want to reserve. I'm into that. And so I will end my time and I'll save my time for rebuttal. Thank you. Thank you, Mr. Branca. Ms. Shipley.  I apologize, Your Honors. Thank you very much. May it please the court, my name is Joan Shipley and I represent the United States. This court should affirm the district court's denial of Willans' motion for acquittal because the evidence was sufficient to support Mr. Willans' conviction for attempted enticement of a minor. This court should also affirm the district court's ruling that the expert testimony was inadmissible as to the enticement charge. The court did not abuse its discretion in ruling that because the testimony would violate federal rule of evidence 704 as applied to traveling across state lines for minors, which was charged in count one, that the testimony therefore would have been the requisite mental state in that charge. Therefore, the district court found that there would have been contravention of the federal rule of evidence 403 if it had been allowed under the enticement charge and she found that that would have been too confusing for the jury. Mr. Willans does not appear to be challenging, as Mr. Branca said, under 2423, the traveling for across state lines. Your Honors, the government believes that this is very much like Spurlock. In fact, many of the conversations that was had between Mary and Sammy and Mr. Willans, in fact, it was Willans, and the testimony bears this out, that told Sammy that he was into pornography that depicted sex between fathers and daughters and between siblings. So it was Mr. Willans who started the conversations about the fact that he was interested in taboos that included sex with minors, sex with minors and their parents. Mr. Willans claims there is no evidence that his actions violated the enticement charge, but the text messages prove otherwise. In the text messages, he did directly ask Sammy if her daughter would want to play. He wanted to know what kind of sex acts that she was into, and he asked Sammy if she would have to talk her daughter into playing with him. He also goes through in which he wanted to engage with the minor and the minor and Sammy at the same times. Is there any relevance to that fact, counsel? That's the way I think defense counsel is trying to distinguish this case from Spurlock. But is there any relevance to the fact that he wanted to commit sexual acts with both of them together, in your view? Well, there is, Your Honor, because in the fact he wanted Sammy to entice the minor to engage in these sex acts instead of sex acts with just the adult. And not only did he describe those sex acts, Your Honor, he showed up at the scene with the very props that he described in those purported sex acts that he would use with another conversation between Sammy and Willans where Mr. Willans asked if he would need to wear a condom, or rather Sammy asked him if he would wear a condom. He agreed that he would with the daughter, but not with Sammy. Also, when he arrived at the scene, Your Honor, he had the condom in the car with him. So this is very similar to Spurlock in that the conversations that this court found that constituted Mary being the intermediary for the enticement, it also was part of the substantial step that this court found that Spurlock took. However, Mr. Willans took even further, took more substantial steps in completing the intent to entice. Furthermore, Your Honors, it also, this court found in Spurlock that the enticement statute does not exempt sexual predators who attempt to harm children by exploiting their natural trust to their parents and the influence that their parents have over children. It was that influence that Mr. Willans attempted to use to get to have sex with the minor. And it was that influence Also of note, when Mr. Willans made the call to the minor, the telephone call to the number that Sammy had purported as the number of her daughters, he did, he used a feature on his phone so that that number would be blocked so that when he called the minor, she would not be able to see that number. Therefore, the call was not an accident. Furthermore, the text that Willans continued to bring up with Sammy, and as a matter of fact, there were several times that Sammy stopped chatting with Willans. He reached back out and he was very specific in the last time he reached out before he arrived at the apartment in that he wanted both of them. As far as the second incident, as I'm sorry, as far as the second issue in this, the expert testimony, the district court found that it was inadmissible in 2423, which is traveling across state lines. And I differ with Mr. Binka. It doesn't seem in his brief that he was challenging the admission of that under 2423B, the traveling. It seemed that he was challenging the fact that it was not allowed under 2422B, the enticement charge. However, this court used as a standard in moralis that the abuse of discretion standard of review is found when a relevant factor that is not the case here. In this case, the district court judge listened to the proper testimony. She explained her analysis as to why she was not admitting this evidence in either of these counts. And the first one was the fact that she found in the traveling across state lines count that it actually addressed the mental state about whether he intended to have sex with a minor. She also found because of that, that it would be almost unreasonable to expect a jury to consider it for one count and not consider it for the other count. So she also continued with that discussion by expressing concerns over the test. Some of the cases that Mr. Willen cites in his defense in Loray's and in Hite and in Gladish, those were all reversed for other issues other than the inadmissibility of the expert testimony. This judge, the district court judge in the case at hand, found that the purpose of the test that Willens wanted his expert, Mr. Chupik, to testify to geared more towards treatment. She expressed concern that they were not geared towards innocence or guilt and that the test depended on the reliability of Mr. Willens giving the information to the examiner in a truthful manner. And there were some of the questions on the examinations that Mr. Willens did not even complete. So she questioned the reliability of those tests in that, as did the Ninth Circuit and upheld the holding in Hoffice and found that that court also did not abuse its discretion because it suppressed, did not allow the expert testimony that Mr. Hoffice was attracted to minors. And that was the testimony that Mr. Willens sought to elicit from his expert is that he was not attracted to 12-year-old girls. Do you really believe though that the Ninth Circuit is right on that? The reason why I ask that is it seems like maybe it has low probative value, but to say it's irrelevant seems to me to be a reach. Well, Your Honor, I won't say that it is irrelevant. I did in Hoffice, if I might note, it joined several other circuits at that time in finding that whether it was not an element of 24-22 that the defendant intended to have sex with a minor, but that he intended to entice the minor to do so. The other circuits were the Seventh, the Sixth, and the Tenth that have also ruled that that's not an element of 24-22B as it goes to enticement. So I wouldn't say that it is irrelevant, but I would say that it's not an element, and therefore, it could confuse a jury into thinking that they had to find that that was one of the elements of that case in which it was not. Also... The way I read your argument is that you're really urging us to rely on 403 and that the Ninth Circuit case may be instructive, but go with the District Court and go with the 403 analysis because it's a sounder way to go. Am I reading that correctly? Yes, Your Honor, you are reading that correctly. She did feel like after listening to the testimony that it would confuse a jury and that she felt it would be unreasonable to ask them in a jury instruction to not consider it for one charge, but to consider it for the other. So yes, I would agree with that. Also, if I could differentiate or draw the exclusions from one of the cases in Gillis, the Eleventh Circuit also found that the exclusion of the expert was not an abuse of discretion, and that District Court also found that it would be simply because the reports and the testimony would rely on the defendant's truthful answers to questions, and that really the purpose of that testimony was to present the opinion that Mr. Gillis in that case did not intend to commit the offense. That is very similar to what the District Court judge found in Willans. Does the District Court, let me interrupt you, the District Court really addressed fantasy evidence by itself? Did you know there's a whole bunch of cases on fantasy evidence only? Helpless is a fantasy evidence only, basically. Yes, Your Honor, that is correct, and she did not go into a lot of the fantasy. I think the reason that she did not is because the trier of fact in this case had all of the evidence to consider, and part of the evidence that they considered was the physical evidence that Mr. Willans showed up with, in addition to some of the sex toys that he showed up with and the condoms. He also came prepared to have sex after he refilled a Cialis prescription that day on his drive, and in fact drove over two hours from Tennessee to Central Arkansas to have sex with this minor. I think it's also of note to this Court that Mr. Willans in the phone extraction that was completed was having multiple conversations with multiple women close by him in Tennessee as he referred to seeing them and being within driving distance of them as well. He didn't have to make the trip to Central Arkansas over a two-and-a-half-hour trip to have sex with an adult because he had ample opportunity in Tennessee. The one difference there was that there were no chats with those women about having sex with a minor as there was with Sammy. It is also of concern or actually noted that Mr. Willans asked Sammy about some pictures that she alleged that her ex-husband had taken of her daughter. Willans wanted to know if the daughter was nude in those pictures and if she still had them, and he wanted to see if she did. He also appealed to Sammy's persona in that she had been a jilted woman, kept telling her how sweet he would be to her and if they could just work this out so that he could come and be with both of them together. I think the dispositive comment from Willans is at the language. The district court judge in this case also did have concerns about the reliability of the information. She also found that there were some inconsistencies. Dr. Chupik was a licensed social worker. In many of the cases that are cited in both the defendant's, the appellate's brief and the government's brief, they were psychiatrists that not only were testifying about general subcultures, such as they were testifying about the diminished mental capacity of the defendants. That was not the case here. Here, Dr. Chupik was supposed to testify explicitly to the fact that the state. In the Gillis Case, in the 11th circuit case, if I may bring to the attention of the Court one further note, the district court felt that the testimony lacked reliability and they found that also on the same argument that the district court in Willans did that it was hard to rely on that information because it too was going to come directly from the defendant, not from scientific studies that would be done. In Hite, and I see the end of my time is coming, but the other cases that were relied on were remanded because of jury instructions not taking substantial steps and dicta was where the courts expressed their opinions about the expert testimony. So for the reasons that we have given and the reasons cited in our brief, we ask that the court to affirm the district court's rulings. Thank you very much. Thank you, Ms. Shipley. Mr. Benka, your rebuttal. Yes, I appreciate your honors. With regard to the dicta addressing the Hite case, yes, I agree that it was remanded for reasons other than it had something to do with the jury instructions, but that court felt it was that important to go ahead and address that issue right then and there because it was going to come back up if they didn't. So I don't disagree that it was dicta in the sense that they argued it, but I think it's precedent. I think it's a DC precedent, and I think that Hite case is clearly distinguishable from the facts here. And like I said, just to kind of retouch on that, the facts in Hite, they were from the beginning, it was all about the defendant wanting to enter that course of conduct with a child. And even under that circumstance, even with the level of degree of those exchanges in the private quarters that those two had with regard to it, that court still felt that his ability to express that defense, or at least to put on a defense, was that important. Of course, it's a constitutional right to put on a defense. And also, too, I think it becomes even more important when the defendant takes the stand and tries to explain to a jury that this is fantasy and tries to get them to come around as to what it is that's going on in these rooms and what fantasy is versus how people play it out. People have fantasies, crazy fantasies, but fantasy is crazily different than reality. And some people talk about things that they would never, ever, ever talk about in reality, and it may be illegal, it may be in the confines of reality, it may be, but people have those conversations, and those conversations are protected. So you have an officer in the beginning reaching out to Mr. Willans, who is otherwise, as the government just pointed out, he's not engaging anyone else talking about children or talking about sexual acts with children. This was interjected by the officer in this particular case. So from there and then on, it was Sammy's fantasy, and he was playing along with that fantasy. That's what he was doing. So I think that that's different. As far as the testimony from the expert, again, how crucial is it when he's trying to get up there to explain what's going on when you have an expert who can explain this, can explain why people have fantasies, can explain that people who actually have fantasies don't actually act those fantasies out. Jurors need to understand that it's okay to have fantasies and that it's not illegal to have those fantasies. Now, yes, the expert could have – I think the expert could have testified, and all the things that Ms. Shipley brought up with regard to the inconsistencies or the problems or those things could have been subject to cross-examination. He wasn't going to speak as to the intent. He wasn't going to go in there and say, hey, Mr. Mullins was not going to – or Mr. Willans was not going to participate in this act. He was just going to say that he did not have a sexual propensity to do that. So then a jury can decide on their own, hey, was he doing it for this purpose? As Ms. Shipley pointed out, hey, he was engaged in these conversations with these other people during the same period of time, mentioning no children. Now, Mr. Willans has an argument because now he can sit there and say, see, he wasn't doing it over here. He was doing it over here because Sammy brought it into play and he was just going through with the fantasy. And that's the reason why we have experts and that's the reason why we talk about experts. Now, experts talk about mens rea all the time, whether a statement is voluntary or not. Now, I ran out of time on my rebuttal, but I appreciate the report. Thank you, Mr. Rinca. Hansel, we appreciate both of your appearances and arguments today. The case is submitted and will be decided in due course.